CRICHTON, J.,
would grant and assigns reasons.
hBy denying'this writ, the majority has passed on a valuable opportunity to. clarify "an area of jurisprudence which heretofore has :not been explored by this Court;, and •one which, I believe, concerns the integrity of the justice system.
I understand the necessarily' clandestine investigative work that a narcotics officer, for example, must perform. 1 However, the Fourth Amendment of the United States Constitution bestows on us a powerful guarantee of freedom from unreasonable searches and seizures. The Louisiana Constitution extends this protection to prevent unreasonable “invasions of' privacy.” La. Const. Ann. art. I, § 5; see, e.g., State v. Jackson, 00-0015 (La.7/6/00), 764 So.2d 64, 69, As a general rule, a search warrant is required for the search of private property. State v. Hargiss, 288 So.2d 633, 635 (La.1974). A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. State v. Coleman, 14-0402 (La.2/26/16), 188 So.3d 174, 192. One *1164 of these exceptions is consent, and the State bears the burden of proving that the consent was given freely and voluntarily. Id. In consenting to a search, then, a person potentially forfeits a fundamental right of state and federal law.
In the instant case, police officers informed the defendant that they were investigating an armed robbery (in fact, the officers were investigating narcotics ^trafficking) and requested permission to search his car. The defendant consented. During the search, the officer opened a cooler, finding a salmon vacuum-packed in layers of plastic sealant. The police cut through the sealant, cut into the body of the fish itself, and discovered six pounds of marijuana.
This . Court has previously found that officers “slightly [misstating]” the purpose of a search did not automatically vitiate a defendant’s consent; however, the Court simultaneously observed that “the scope of the search was of no greater intensity than they represented they would make.” State v. Watson, 416 So.2d 919, 921 (1982). It troubles me here that the scope of the search seems to obviously exceed the represented purpose — conceivably the fruits of an armed robbery could be vacuum-sealed into fish, though it stretches the limits of my imagination. Stated another way, I question whether the fish search passes the “smell test.”
The judiciary performs a delicate balancing exercise when it weighs the constitutional rights and freedoms of individuals against the need for expedient, aggressive, and creative law enforcement. Cases involving deception used to gain consent to search a vehicle are rare — neither the U.S. Supreme Court nor this Court has never directly confronted the question. Though my colleagues disagree, I believe this matter affords this Court an excellent opportunity to clarify and develop the law as it relates to deceptive tactics used to gain consent to search — specifically, whether any distinctions should be made between Watson, which involved the search of luggage, and the instant case, which involves the search of a vehicle.
Furthermore, I believe this case offers this Court a chance to examine whether or not categorical distinctions exist between misleading a defendant once he has already relinquished a Constitutional right (for example, misleading a defendant during a custodial interrogation once he has already waived Fifth Amendment privileges) versus the misleading a defendant in order to cause him to [¡¡relinquish a Constitutional right (such as the instant case, where the defendant relinquished his Fourth Amendment privileges based on the representations made by the police.)